# Exhibit A

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

6/4/2026 3:57:14 PM

Clerk of the Superior Court
By M. Sepulveda    ,Deputy Clerk

Jordan M. Jones, Esq. SBN 344487
STINAR LANNEN, PLLC
360 E 2nd St., Suite 820
Los Angeles, CA 90012
Tel: (213) 223-6640
Email: Jordan@StinarLannenLaw.com
*Counsel for Plaintiffs*

Parker G. Stinar, Esq. (*Pro Hac Vice* forthcoming)
STINAR LANNEN, PLLC
280 W. Maple Rd., Ste. 230
Birmingham, Michigan 48009
Phone: (248) 565-2690
Fax: (248) 565-2691
Email: Parker@StinarLannenLaw.com
*Counsel for Plaintiffs*

Symone D. Shinton, Esq. (*Pro Hac Vice* forthcoming)
STINAR LANNEN, PLLC
280 W. Maple Rd., Ste. 230
Birmingham, Michigan 48009
Phone: (213) 277-6480
Fax: (248) 565-2691
Email: Symone@StinarLannenLaw.com
*Counsel for Plaintiffs*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### SAN DIEGO COUNTY

| | |
|---|---|
| JOHN S.P. DOE; individually, <br><br> PLAINTIFFS, <br><br> vs. <br><br> COUNTY OF SAN DIEGO, a public entity; DOES 1-100, individuals, <br><br> DEFENDANTS. | Case No.:  26CU030712C <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **SEXUAL ASSAULT** <br> 2. **SEXUAL BATTERY** <br> 3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br> 4. **VIOLATION OF BANE ACT (CIVIL CODE 52.1)** <br> 5. **NEGLIGENCE** <br> 6. **NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION** <br> 7. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** <br> 8. **VIOLATION OF 42 U.S.C. § 1983 (AGAINST INDIVIDUAL DEFENDANTS)** |

1

9. **MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (*MONELL*) (AGAINST COUNTY OF SAN DIEGO)**
10. **FAILURE TO SUMMON IMMEDIATE MEDICAL CARE (GOV'T CODE § 845.6) (AGAINST COUNTY OF SAN DIEGO AND INDIVIDUAL DEFENDANTS)**

**DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, JOHN S.P. DOE, individually (herein after referred to as "PLAINTIFF"); for causes of action against Defendants COUNTY OF SAN DIEGO, a public entity (hereinafter "COUNTY"); and the following individuals who were employed by the County at all relevant times: DOES 1-100, inclusive, (herein after referred to as "INDIVIDUAL DEFENDANTS" and the terms "DEFENDANTS" shall reference all Defendants, including DOES 1-100 and COUNTY, its agents and/or employees), alleges as follows:

## INTRODUCTION

1.      This case arises from a systemic failure to protect vulnerable minors in our juvenile detention system from egregious patterns of foreseeable sexual misconduct and abuse by the same predator officers and county officials who swore an oath to serve and protect. These acts of sexual deviance against citizens derive from the same framework that provides the basis for legitimate policing where they often operate alone and largely free from any direct supervision, either from administrators or fellow officers. PLAINTIFF was abused as an incarcerated minor who was separated from his family; an ideal victim and a prime target for sexual exploitation by INDIVIDUAL DEFENDANTS. PLAINTIFF was frightened and made to believe that: 1) the abuse he was experiencing was part of his state-sanctioned criminal punishment, and 2) if he complained, his complaint would fall on "deaf ears" at best, and/or (more likely) he would be retaliated against for complaining. DEFENDANTS affirmative conduct and representations

2

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

created PLAINTIFF's (accurate) understanding that he could not meaningfully obtain redress for the abuse he was experiencing, and, if and when he tried to, nobody would believe him over the word of sworn peace officers subject to the power and coercive authority granted to law enforcement officers.

2.      This egregious conduct in violation of PLAINTIFF'S civil liberties, state constitutional rights as well as Penal Code §§ 243.4(a) and 289.6 which makes it a crime to engage in sexual misconduct with an inmate, occurred under color of authority by actors, employees and/or agents of COUNTY'S Probation Officers and employees, while they were detained and housed at a juvenile facility owned and/or operated by COUNTY'S Probation Department.

3.      The INDIVIDUAL DEFENDANTS used their positions of trust and authority to repeatedly sexually abuse minor inmates in their custody, care, control, and direction by engaging in various brutal and sexual acts ranging from threats and use of pepper spray to inappropriate touching and/or aggressive groping to oral, vaginal or anal sex, and penetration. If PLAINTIFF and other similarly situated detainees failed to comply with the demands of the INDIVIDUAL DEFENDANTS, they were punished by having their privileges taken away and/or physically threatened with abuse, or loss of further rights and privileges.

4.      These abuses were committed to satisfy the INDIVIDUAL DEFENDANTS' own control, power, and sexual desires at the expense of defenseless minors, including PLAINTIFF. Defendant COUNTY was and/or should of all the abuses that PLAINTIFF endured during the confinement of COUNTY Facilities. However, instead of taking adequate corrective and preventive actions, COUNTY ratified and endorsed the INDIVIDUAL DEFENDANTS' behavior through acts and/or omissions and their undeniable illegal conduct, which sent a message to PLAINTIFF and others similarly situated that such abuse and harassment was acceptable by COUNTY.

5.      PLAINTIFF has endured egregious violations of his rights under the Constitution and laws of the United States, as well as those guaranteed by the Constitution and statutes of the

3

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

State of California. These infringements manifested through acts of sexual abuse and assault. PLAINTIFF's experiences underscore a distressing neglect and systemic failure to safeguard their fundamental human rights and dignity.

## PARTIES

6.　PLAINTIFF and those similarly situated was at all relevant times a resident of the State of California. Due to PLAINTIFF being a victim of childhood sexual abuse and harassment, his identity has been protected in this public filing due to the sensitive and personal nature of the allegations under *Penal Code* § 293 and the fact that he was a victim of sexual assault as a minor.

7.　Defendant COUNTY is, and at all relevant times, was a government entity located in the County of San Diego, State of California. COUNTY was and is organized under the laws of the State of California. COUNTY was responsible for the supervising, hiring, retention, and training of INDIVIDUAL DEFENDANTS. At all relevant times, COUNTY and INDIVIDUAL DEFENDANTS had minor residents under its care, custody, and control that were confined to its premises including PLAINTIFFS.

8.　One department that makes up Defendant COUNTY'S government is the Juvenile Probation Department. Plaintiff is informed and therefore believe, that its main offices are located at 9444 Balboa Avenue, Suite 500, San Diego, CA 92123. Defendant COUNTY'S Probation Department operates youth detention camps owned and/or operated by Defendant COUNTY, which exclusively housed youth in several facilities including the following.

9.　The Rancho Del Campo Juvenile Ranch Facility ("RDC") was a juvenile male facility located approximately 65 miles east of the City of San Diego at 957 Forrest Gate Road, Campo, California, 91906, and was owned and operated by COUNTY. Of the five juvenile detention facilities operated by the COUNTY, young men with longer commitment terms were usually assigned to RDC. Detainees resided in one of two buildings ("Campo I" or "Campo II") depending on their program. Rancho Del Campo was specifically designed to address behavioral

4

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

issues of male youth aged 12-17.5 years old. The San Diego County Probation Department permanently closed RDC in 2016. RDC's bed capacity was 250.

10.    INDIVIDUAL DEFENDANTS at all relevant times herein were individuals residing in the County of San Diego, acting under the authority and in the course and scope of their employment with Defendant COUNTY at the time the improper and unlawful conduct occurred. PLAINTIFF was not told these officer's full names, and some were not aware if they told first or last names, or the proper spelling. The full true legal names of INDIVIDUAL DEFENDANTS are readily unavailable and unknown to PLAINTIFF. When the true full names of INDIVIDUAL DEFENDANTS are ascertained, PLAINTIFF will request leave of Court to amend this Complaint to state their true names herein.

11.    Defendants DOES 1-20, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFF is ignorant as to the true names and capacities of DOES 1-20. DOES 1-20 are individuals who were in a supervisory, employee, and/or agent relationship or role that controlled, operated, or supervised the youth facility located in San Diego County, California. DOES 1-20 were responsible for the supervising, hiring, retention, and training of DOES 51-100. DOES 1-20 were employees, agents, principals, and/or contractors of COUNTY. When the true names of DOES 1-20 are ascertained, PLAINTIFF will request leave of Court to amend this Complaint to state their true names herein.

12.    Defendants DOES 21-50, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFF is ignorant as to the true names and capacities of DOES 21-50. DOES 21-50 are individuals, corporations, and/or entities that operated, controlled, or supervised the youth facilities in San Diego County, California. DOES 21-50 were responsible for the hiring, retention, and training of DOES 51-100. DOES 21-50 were employees, agents, principals and/or contractors of COUNTY. When the true names of DOES 21-50 are ascertained, PLAINTIFF will request leave of Court to amend this Complaint to state their true names herein.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

13.    Defendants DOES 51-100, inclusive, and each of them, are sued herein under said fictitious names. PLAINTIFF is ignorant as to the true names of DOES 51-100 who are individuals sued by such fictitious names. DOES 51-100 were employees, agents, principals and/or contractors of COUNTY and DOES 1-50 while working at the facility in San Diego County, California. When the true names of DOES 51-100 are ascertained, PLAINTIFF will request leave of Court to amend this Complaint to state their true names herein.

14.    At all times mentioned herein, DOES 51-100 were adult guards, counselors, supervisors, mentors, advisors, and employees of COUNTY and DOES 1-50. DOES 51-100 acting as employees, agents, and/or servants, were under Defendant COUNTY and DOES 1-50's control and/or supervision. Upon information and belief, DOES 51-100 were employed as guards, counselors, staff members, and/or supervisors of minor residents while at COUNTY and DOES 1-50's facility. As their employees, COUNTY and DOES 1-50 held DOES 51-100 out to the public and PLAINTIFF to be of high ethical and moral repute, and to be in good standing with COUNTY and DOES 1-50 and the public in general. In this capacity, DOES 51-100 oversaw, supervised, mentored and advised residents confined to their custody regarding personal issues, daily needs, their future, and general emotional and psychological issues. COUNTY and DOES 1-50 held DOES 51-100 out to the public and PLAINTIFF to be highly qualified guards, counselors, supervisors, mentors, and advisors who could and would assist PLAINTIFF with daily living needs as well as working through personal issues they faced, especially in light of the fact PLAINTIFF were minors in custody. Inherent in this representation was the understanding that DOES 51-100 were persons of high ethical and moral standing, selected to provide supervision, leadership, guidance, mentoring, and advising to all resident inmates, including PLAINTIFF. PLAINTIFF, initially, reasonably believed that DOES 51-100 were persons worthy of his trust.

15.    PLAINTIFF is informed and believes, and on that basis, alleges, that at all times mentioned herein, there existed a unity of interest and ownership among DEFENDANTS, and each of them, such that any individuality and separateness between DEFENDANTS, and each of

6

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

them, ceased to exist. DEFENDANTS, and each of them, were the successors-in-interest and/or alter egos of the other Defendants, and each of them in that they purchased, controlled, dominated, and operated each other without and separate identity, observation of formalities, or other manner of division.

16.    PLAINTIFF is informed and believe that and thereon allege that all DEFENDANTS including INDIVIDUAL DEFENDANTS, were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint ventures, co-tortfeasors and employees of all other Defendants, and that all acts alleged occurred within the course and scope of the agency, employment, partnership, joint venture, conspiracy and/or enterprise, and their co-defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in contradiction with the other allegations.

17.    Regarding each constitutional violation and tort referenced, PLAINTIFF alleges that the COUNTY is vicariously liable for the actions of INDIVIDUAL DEFENDANTS, which actions were in the scope of employment, because imposition of vicarious liability (1) will deter recuring similar misconduct by incentivizing those in authority to exercise greater vigilance; (2) will ensure more reliable compensation for victims; and (3) will equitably distribute the loss among those who benefit from the COUNTY'S exercise of police power.

18.    All allegations in this Complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further discovery. Pursuant to *Code of Civil Procedure* section 340.1, PLAINTIFF brings this Complaint against DEFENDANTS, and each of them, to recover damages suffered by PLAINTIFF as a result of childhood sexual abuse and other relief available at law and in equity.

    a.    This action is brought pursuant to Code of Civil Procedure section 340.1. PLAINTIFF alleges that the sexual assaults and resulting injuries described herein occurred when PLAINTIFF was a minor. At the time of filing this action, PLAINTIFF was under the age of 40 and/or, in the alternative, discovered the

7

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

psychological injury and its causal relationship to the childhood sexual assault within five years prior to filing this action. Accordingly, this action is timely under Code of Civil Procedure section 340.1.

b. This action seeks recovery of damages suffered as a result of childhood sexual assault pursuant to Code of Civil Procedure section 340.1 and is exempt from the Government Claims Act presentment requirements under Government Code section 905(m). PLAINTIFF expressly alleges the section 905(m) exemption and, therefore, was not required to present a pre-suit claim to the COUNTY.

19. Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## JURISDICTION AND VENUE

20. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of this Court. Accordingly, this Court has jurisdiction over the case at bar.

21. Venue is proper in Superior Court for the County of San Diego because the subject incidents upon which this Complaint is based occurred in San Diego County, California. Further, Defendant COUNTY exists and operates within the County of San Diego.

## EQUITABLE TOLLING, ESTOPPEL, DURESS, AND DELAYED DISCOVERY

22. PLAINTIFF's claims are timely filed, or, alternatively, their statute of limitations is subject to tolling for two years pursuant to Code of Civil Procedure § 352.1 because his claims arose during a period of incarceration.

23. In addition, under the delayed discovery rule, PLAINTIFF did not discover, and in the exercise of reasonable diligence could not have discovered, the facts constituting the wrongful conduct, the causal relationship between that conduct and his injuries, the actionable nature of the COUNTY's institutional failures, including its policies and customs of deliberate indifference to sexual abuse of minors, and the wrongful nature of DEFENDANTS' acts and omissions until a date within the applicable limitations period as extended by the foregoing tolling doctrines, as

8

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

more specifically alleged below, regarding the timing and circumstances of his discovery. PLAINTIFF's delayed discovery was reasonably caused and prolonged by the trauma of the sexual abuse, his dependence on COUNTY staff for basic needs and safety at the facility, the complex power dynamics of incarceration, and DEFENDANTS' concealment and retaliation as alleged herein. PLAINTIFF only recently discovered his injuries when, thorough public media, he learned that other survivors of sexual abuse had come forward. Prior to that time, PLAINTIFF was made to believe that the abuse he experienced was a function of his state-sanctioned criminal punishment. Nor could he appreciate the COUNTY's systemic role in enabling the abuse or have reason to know that COUNTY maintained customs and policies of failing to train, supervise, or monitor staff, or of suppressing complaints of sexual abuse.

24.    PLAINTIFF's claims are further equitably tolled by the DEFENDANTS' actions undertaken specifically to fraudulently conceal the fact that PLAINTIFF's rights were being violated by non-peace officer COUNTY employees and agents in custodial, medical, kitchen, maintenance, stockroom, and other institutional roles at the facility, including but not limited to those employees' misrepresentations that their conduct was necessary, appropriate, or authorized; their threats of negative consequences if PLAINTIFF reported or refused such conduct; their refusal to allow PLAINTIFF to document or meaningfully report what had occurred; and the actions taken by supervisors to suppress, minimize, or discredit complaints so that this misconduct would not come to light and complaints would not be sustained, as described more fully herein.

25.    PLAINTIFF contends that DEFENDANTS are equitably estopped from asserting any statute of limitations defense because DEFENDANTS engaged in, tolerated, and failed to prevent retaliatory actions against inmates who reported COUNTY staff for sexual misconduct, thereby deterring PLAINTIFF from timely reporting and pursuing his claims. PLAINTIFF incorporates by reference all allegations herein describing the pervasive and well known pattern of retaliation, and the constant threat of such retaliation, which made it unsafe for inmates to bring complaints or claims regarding staff sexual abuse. The same concealment, misrepresentations, and

9

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

retaliation that induced PLAINTIFF's delayed understanding that he was injured and delayed reporting of his injuries should estop DEFENDANTS from benefiting from any limitations period. DEFENDANTS actively concealed the sexual abuse and the institutional conditions that enabled it. The culture at the facility normalized physical abuse and coercion by staff and systemically instilled fear of retribution in detainees who wanted to get help to make the abuse stop but were provided with no safe means to do so.

26.    PLAINTIFF's claims are also equitably tolled because duress prevented them from coming forward sooner. Following his release from juvenile detention, PLAINTIFF faced significant barriers to accessing legal resources and pursuing claims, including the well-understood lasting psychological effects of the abuse. PLAINTIFF further feared retaliation from the COUNTY, having experienced its culture of intimidation and suppression of complaints firsthand. Only recently, through the support of understanding that the sexual abuse he experienced was not state-approved criminal punishment but in fact illegal and a crime, and through improved circumstances in their personal life like the development of their own support system, access to medical care, and improved housing stability, has PLAINTIFF felt safe and secure enough to take the psychologically destabilizing act of coming forward.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY PLAINTIFFS

27.    At all times material hereto, PLAINTIFF was a minor in the direct custody, care, supervision, and control of DEFENDANTS, inclusive, due to physical confinement at the facility.

28.    PLAINTIFF's confinement at the facility was court-ordered and mandatory, and the duration and nature of this confinement depended on compliance with the orders, demands, and directives of DEFENDANTS, and each of them.

29.    At all times herein referenced, DEFENDANTS, were in the position of authority, trust, influence, and persuasion over PLAINTIFF. INDIVIDUAL DEFENDANTS were agents and/or employees of COUNTY and DOES 1-50, who maintained a special relationship with them to assure them reasonable health, safety, and freedom from undue restraint and abuse.

10

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

INDIVIDUAL DEFENDANTS' abuse of PLAINTIFF was under the color of authority. Defendant COUNTY is liable for the acts, omissions, and conduct of its employees pursuant to *Government Code* § 815.2.

30.    As set forth herein, DEFENDANTS, and each of them, have failed to uphold numerous mandatory duties imposed upon them by state and federal law, and by written policies and procedures applicable to DEFENDANTS, including but not limited to the following:

a. Duty to use reasonable care to protect wards of the state from known or foreseeable dangers (*Government Code* §§ 820, 815.2);

b. Duty to use reasonable care to protect wards of the state from known or foreseeable dangers (Government Code §§ 820, 815.2);

c. Duty to refrain from taking official action that contradicts the provisions of Article 1, section 28(c) of California Constitution;

d. Duty to protect wards, and provide adequate supervision (Government Code § 815.6);

e. Duty to ensure that any direction given to wards is lawful, and that adults act fairly, responsibly and respectfully towards wards;

f. Duty to properly train guards, counselors, supervisors, security and staff members so that they are aware of their individual responsibility for creating and maintaining a safe environment;

g. Duty to supervise staff and wards and enforce rules and regulations prescribed for facilities such as COUNTY and DOES 1-50's facilities, as is reasonably necessary to maintain order, protect property, or protect the health and safety of staff and wards or to maintain proper and appropriate conditions conducive to safe living.

h. Duty to exercise careful supervision of the moral conditions at a confined resident program;

11

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

i.  Duty to properly monitor wards, prevent or correct harmful situations or call for help with the situation is beyond their control;

j.  Duty to ensure that personnel are actually on hand and supervising wards;

k.  Duty to provide enough supervision to wards;

l.  Duty to supervise diligently;

m.  Duty to act promptly and diligently and not ignore or minimize problems;

n.  Duty to refrain from violating PLAINTIFF'S right to protection from bodily restraint or harm, from personal insult, from defamation, and from injury to their personal relations (*Civil Code* § 43);

o.  Duty to abstain from injuring the person or property of PLAINTIFF, or infringing upon any of his rights (*Civil Code* § 1708); and

p.  Duty to report suspected incidents of child abuse and, more specifically, childhood sexual abuse (*Penal Code* §§ 11166, 11167);

q.  DEFENDANTS and each of them had and have a duty to protect wards, including PLAINTIFF. DEFENDANTS were required, and failed, to provide adequate supervision, and failed to be properly vigilant in seeing that supervision was sufficient to ensure the safety of PLAINTIFF and others.

31.  COUNTY lodged with INDIVIDUAL DEFENDANTS, the color of authority, by which they were able to influence, direct, and abuse Plaintiffs and others, and to act illegally, unreasonably, and without respect for the person and safety of Plaintiffs.

32.  COUNTY and DOES 1- 50 had a duty to and failed to adequately train and supervise all guards, advisors, counselors, mentors, security and staff to create a positive and safe environment, specifically including training to perceive, report and stop inappropriate conduct by other members of the staff, specifically including DOES 51-100, with children.

33.  COUNTY and DOES 1-50 had a duty to and failed to enact and enforce rules and regulations prescribed for facilities such as their school and facilities where wards of the state were

12

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

confined without the ability to leave on their own free will and where it was necessary to execute reasonable control over wards to protect their health and safety.

34.    COUNTY and DOES 1-50 were required to and failed to exercise careful supervision of the moral conditions at their school and facilities and provide reasonable supervision.

35.    As minors in custody, the COUNTY and DOES 1-50 as the employers and supervisors of DOES 51-100, knew that they were in direct contact with young children and stood *in loco parentis* regarding PLAINTIFF while he was confined, having been entrusted to COUNTY and DOES 1-50 for their safety, protection, and well-being, while in reality PLAINTIFF was subjected to sexual abuse at the hands of those empowered to exercise total authority over him.

36.    PLAINTIFF further contends that he was targeted after being isolated and controlled by means of the special relationship between guards and inmates as well as the *in loco parentis* relationship established through juvenile detention. INDIVIDUAL DEFENDANTS, through grooming and isolated confinement of PLAINTIFF and others similarly situated, exploited their position of trust and authority resulting in the sexual abuse of minors in violation of *Penal Code* §§ 261.5, 243.4(a) and 289.6.

37.    PLAINTIFF is informed and believes and thereon allege that DEFENDANTS, its employees and/or agents knew or should have known that INDIVIDUAL DEFENDANTS had engaged in unlawful sexual abusive and harassing conduct in the past, and/or was continuing to engage in such conduct. DEFENDANTS had a duty to disclose these facts to PLAINTIFF and others, but negligently, and/or intentionally suppressed, concealed, and/or failed to disclose this information. The duty to disclose this information arose from the special, trusting, confidential, fiduciary relationship between the DEFENDANTS and PLAINTIFF.

38.    Based upon information and belief, and alleged thereon, PLAINTIFF contends there was no formal or informal grievance process relating to the conditions of confinement in which juvenile detainees suffering sexual abuse could safely complain about the sexual abuse and

13

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

harassment by INDIVIDUAL DEFENDANTS as recognized by the Prison Rape Elimination Act (PREA) of 2003. Moreover, to the extent there was a formal process, PLAINTIFF at all times was not made aware of it and DEFENDANTS failed to advise PLAINTIFF of his right to complain about the sexual misconduct without fear and/or threat of retaliation or other forms of deterrence, despite the existence of a mandatory duty to do so. PLAINTIFF and others were coerced and threatened not to report the sexual abuse through physical and verbal acts of intimidation, actual and/or constructive retaliation and/or other forms of deterrence. Due to DEFENDANTS' failure to discharge their mandatory duties, complaints that were made were buried and/or fell on deaf ears and ignored. The "chilling" effect of juvenile detainees witnessing each other being helpless to prevent the physical and sexual abuse they were experiencing similarly worked to create a culture that ensured PLAINTIFF and others would not take the risk of making their circumstances even worse by trying to alleviate them through disclosure.

39.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS escaped liability and discipline for years based on DEFENDANTS' failure to properly and efficiently investigate the allegations of sexual abuse. Moreover, DEFENDANTS were not disciplined, including termination, due to investigators violating the statute of limitations for investigators of peace officers taking more than a year to complete their reports.

40.    PLAINTIFF feared retaliation and punishment, including loss of privileges and increased restrictions, if he reported the abuse. Statements made by INDIVIDUAL DEFENDANTS conveyed that complaints would not be believed or would (and did) result in adverse consequences.

41.    The COUNTY's policies, customs, and practices—including inadequate hiring and screening; deficient training; insufficient supervision; tolerance of staff isolation of minors; failures to report, investigate, and remediate misconduct; and deliberate indifference to known risks—created and perpetuated conditions that allowed the abuse to occur and continue.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

42.    After the incidents, while still in custody, PLAINTIFF and other detainees exhibited acute fear, distress, and emotional dysregulation. Despite the obvious need for immediate evaluation and treatment, COUNTY personnel failed to summon medical or mental health care.

## COUNTY'S VICARIOUS LIABILITY FOR ACTS OF ITS EMPLOYEES

43.    PLAINTIFF is informed and believes and thereon alleges that at all times herein described, INDIVIDUAL DEFENDANTS, were agents, employees, and/or servants of COUNTY and acted under the color of authority where the physical and sexual abuse and misconduct took place. Under the doctrine of respondeat superior, COUNTY is vicariously liable for torts committed by INDIVIDUAL DEFENDANTS within the scope of their employment. Under *Government Code* section 815.2, the respondeat superior doctrine applies to public and private employers in private tort litigation.

44.    COUNTY is liable for all acts and/or omissions to act by INDIVIDUAL DEFENDANTS in the scope of employment given INDIVIDUAL DEFENDANTS, as on-duty employees committed these acts and misused their authority by sexually abusing PLAINTIFF and others, who they had detained at COUNTY facilities. (*See* generally *Mary M. v. City of Los Angeles*, (1991) 54 Cal.3rd 202.)

## SAN DIEGO COUNTY PROBATION DEPARTMENT
## POLICIES AND PROCEDURES

45.    The San Diego County Probation Department maintains "Probation Policies" that set forth COUNTY'S policies and procedures for operation of the juvenile halls under its control, including the RDC facility that housed PLAINTIFF.[1]

46.    The Prison Rape Elimination Act of 2003 (PREA) itself acknowledges that juveniles are "incapable of giving consent because of his or her youth or his or her temporary or

---

[1] https://www.sandiegocounty.gov/content/sdc/probation/Probation_Policies.html

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

permanent physical incapacity."[2] COUNTY Policy 608 specifically incorporates its compliance with PREA. It defines "sexual abuse" broadly to include "sexual activity or voyeurism" which may be "any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or the buttocks of another person" and "an invasion of privacy by intentional watching of personal intimate activities such as dressing or undressing, showering, using the toilet to perform bodily functions or other actions of a private nature." 608.2.

47.    Policy 608.3 describes the voluntary assumption of duty taken by COUNTY to "take appropriate affirmative measures to protect all in-custody clients from a) sexual abuse and harassment, and b) retaliation against any person who reports sexual abuse or sexual harassment". A full-time Supervising Probation Officer is to function as an agency-wide PREA Coordinator and develop, implement, and oversee efforts to ensure sexual abuse is effectively being prevented at COUNTY's juvenile detention facilities. Policy 608.3.2.

48.    Policy 608.3.4 discusses appropriate supervision and monitoring in accordance with 28 CFR 115.313. This includes "ensuring that each juvenile facility it operates has developed, implemented, and documented a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect clients against sexual abuse." The minimum staffing ratio at RDC was 1:8 during client waking hours and 1:16 during client sleeping hours. 608.3.4.3. Thus, by design, clients were more vulnerable to be sexually abused in the evening hours.

49.    Policy 608.5.1 outlines COUNTY's duty to train and educate its employees with specific respect to sexual abuse, including their rights to "be free from retaliation for reporting sexual abuse and sexual harassment," "common reactions of juvenile victims of sexual abuse and sexual harassment," and "how to detect and respond to sexual abuse." Policy 608.6 goes further and requires affirmative "screening for risk of victimization and abusiveness" to occur "upon intake and prior to assignment to a living unit and periodically throughout a client's confinement."

---

[2] https://www.congress.gov/108/plaws/publ79/PLAW-108publ79.pdf, 42 U.S.C. 15609 §10(9)(B).

16

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This process includes a proactive, periodic interview with detainees to determine their "own perception of vulnerability" to sexual abuse. In practice, such proactive steps were either not taken or were used as opportunities to threaten, intimidate, and retaliate against detainees like PLAINTIFF.

50.    Policy 608.7 specifically outlines COUNTY's duties to provide formal reporting processes and includes providing both written or verbal access for detainees to "easily, privately, and securely report any sexual abuse, retaliation or staff neglect that may have contributed to an incident of sexual abuse." It requires providing detainees with the ability to "report sexual abuse to any entity within the Probation Department *or any outside public entity*." The specific phone numbers of these agencies are required to be provided to each detainee during the intake process, and grievance forms must be proactively provided without request. Detainees are additionally to be "provided access to outside victim advocates for emotional support services related to sexual abuse." Policy 608.7.3.

51.    The specific policies and procedures outlining COUNTY and RDC's duties to respond to a situation demonstrating sexual abuse may have occurred are included within Policy Section 608.8. They include ensuring the victim is separated from the offended and provided with appropriate medical treatment, including a referral for psychological evaluation. The Division Chief, Supervisor, and PREA Compliance Manager of a facility are specifically tasked with proactively monitoring detainees to ensure there is no retaliation and the Department of Human Resource Manager is specifically tasked with monitoring staff to ensure there is no retaliation. Policy 608.8.7(a).

52.    The PREA was enacted to establish "national standards for the detection, prevention, reduction, and punishment" of sexual assaults occurring in prisons nationwide. In enacting PREA, Congress made the following findings:

17

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- "Members of the public and government officials are largely unaware of the **epidemic character of prison rape and the day-to-day horror experience by victimized inmates.**"

- **"The high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution."**

- "[E]xperts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison," and "[y]oung first-time offenders are at increased risk of sexual victimization."

- "Most prison staff are not adequately trained or prepared to prevent, report, or treat inmate sexual assaults;" and

- "Inmate victims often receive inadequate treatment for the severe physical and psychological effects of sexual assault—if they receive treatment at all."

53.    The PREA's national standards included creating a system for reporting incidents of sexual assault to ensure the confidentiality of complaints, protect them from retaliation, and assure the impartial resolution of such complaints. A system for data collection, reporting, and investigation of prison staff sexual misconduct was recommended along with specific training of correctional staff "sufficient to ensure that they understand and appreciate the significance of prison rape and the necessity of its eradication."

54.    One of the several explicit purposes of the PREA was to "make the prevention of prison rape a top priority in each prison system" and "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape."

18

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

55.    As further alleged below, Defendant COUNTY has failed to implement, enforce, or otherwise adhere to the procedures necessary to protect inmates under their own guidelines and PREA national standards. This failure has allowed numerous inmates to be subjected to sexual abuse and assault by allowing unsupervised and untrained COUNTY employees to abuse PLAINTIFF with impunity.

### IMMEDIATE MEDICAL NECESSITY FOR VICTIMS OF
### SEXUAL ASSAULT AND SEXUAL BATTERY

56.    Victims of sexual assault and sexual battery undergo significant and multifaceted trauma necessitating immediate medical intervention. This imperative stems from the acute risks associated with physical injuries, from external bruising and lacerations to more severe internal injuries such as pelvic trauma and genital or anal injuries. Victims of sexual assault are at risk of unwarranted pregnancy, contracting sexually transmitted infections, including HIV,[3] hepatitis B, and other pathogens.[4] The standard of care in such circumstances requires timely forensic and medical evaluation, including Sexual Assault Response Team (SART) examinations, evidence preservation, pregnancy prevention measures, and prophylactic treatment protocols, all of which are time-sensitive and medically necessary.

57.    The psychological trauma associated with sexual assault is profound, placing victims at immediate risk for Post-Traumatic Stress Disorder (PTSD), anxiety, depression, and other acute stress reactions. Immediate psychological evaluation and intervention are recommended to address these concerns, mitigate the onset of chronic mental health conditions, and facilitate coping strategies. Expert recommendations from psychiatry underscore the need for early psychological intervention to stabilize the victim and begin the process of psychological recovery.[5]

---

[3] American College of Emergency Physicians, *Management of the Patient with the Complaint of Sexual Assault* (2020).
[4] World Health Organization, Clinical Management of Rape and Intimate Partner Violence Survivors (2020).
[5] Bragesjö, M., Larsson, K., Nordlund, L., Anderbro, T., Andersson, E., & Möller, A. (2020). Early Psychological Intervention After Rape: A Feasibility Study. *Frontiers* in Psychology, 11.

19

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

58.    Immediate and comprehensive medical care serves a dual and indispensable function: addressing acute injuries while preventing the escalation of long-term physical and psychological harm. This includes, at a minimum, the administration of post-exposure prophylaxis (PEP) for HIV within the medically accepted window period, empiric treatment for other sexually transmitted infections, emergency contraception where appropriate, and thorough documentation of injuries for both clinical and forensic purposes. Concurrent mental health screening is equally critical, as it allows for the early identification of trauma responses and facilitates timely referral for ongoing therapeutic care. The failure to provide such care not only departs from established medical standards but foreseeably results in exacerbated injury, prolonged suffering, and significantly worsened prognoses for recovery.

59.    PERPETRATOR DOE DEFENDANTS acting under color of law and within the course and scope of their employment with the COUNTY at FACILITY, owed a non-delegable duty to protect incarcerated individuals from sexual abuse and to ensure that any victim of such abuse received immediate, adequate, and appropriate medical and psychological care. This duty is grounded not only in basic standards of decency and institutional policy, but also in well-established legal mandates, including the obligation to summon and provide necessary medical care to those in custody. DEFENDANTS willfully breached these duties. They not only perpetrated and/or permitted the very acts of sexual abuse they were charged with preventing, but further engaged in deliberate concealment—intimidating victims, suppressing reporting, and obstructing access to medical personnel. This calculated misconduct directly deprived PLAINTIFF of urgently needed medical and psychological treatment at the most critical juncture, thereby magnifying their injuries, compounding their trauma, and causing lasting and irreparable harm. The immediacy of psychological assessment following sexual assault is not merely advisable—it is clinically indispensable. The period immediately following the assault constitutes a recognized window of acute neurobiological vulnerability, during which victims frequently

20

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

experience shock, dissociation, impaired cognition, and heightened fear responses. Without timely intervention by trained mental health professionals, these acute reactions can consolidate into entrenched trauma pathways, substantially increasing the likelihood of chronic conditions such as Post-Traumatic Stress Disorder (PTSD), major depressive disorder, panic disorders, and suicidal ideation. Early psychological assessment is therefore essential to stabilize the victim, evaluate risk of self-harm, initiate trauma-informed care, and implement protective interventions designed to interrupt the progression from acute stress to chronic psychiatric injury. The failure to provide such immediate assessment foreseeably and substantially increases the severity, duration, and permanence of psychological harm.

60.     In custodial settings, this critical need for immediate psychological evaluation is foreseeably and systematically undermined by a pervasive fear of retaliation. Victims of sexual abuse are wholly dependent on correctional staff—including, in many cases, their abusers and those aligned with them—for basic necessities, personal safety, and access to medical and mental health services. This coercive dynamic creates an environment in which reporting abuse, or even requesting psychological assistance, carries a credible and substantial risk of reprisal, including threats, intimidation, physical harm, disciplinary write-ups, loss of privileges, placement in isolation, or transfer to less favorable conditions. As a direct result, victims are effectively silenced at the very moment when psychological intervention is most critical.

61.     DEFENDANTS knew, or at a minimum should have known, that such a culture of fear and retaliation operates as a powerful and foreseeable barrier to disclosure and treatment. Their duty to provide immediate psychological care necessarily included an affirmative obligation to ensure that victims could safely report abuse and access mental health services without fear of reprisal. Instead, by engaging in, condoning, or deliberately ignoring retaliatory practices—and by concealing their own misconduct—DEFENDANTS not only failed to provide the required immediate psychological assessment, but affirmatively created conditions that rendered such care inaccessible.

21

62. This combined failure—denying immediate psychological intervention while fostering an environment of intimidation and retaliation—operated in tandem to magnify and compound PLAINTIFF's harm. Victims were forced to internalize trauma, suppress reporting, and endure escalating psychological distress without support, exacerbating feelings of fear, helplessness, and shame. Clinically, this dynamic is associated with more severe PTSD symptomology, prolonged recovery, and an increased risk of self-destructive behaviors. Legally, DEFENDANTS' conduct reflects a conscious and deliberate disregard for the foreseeable consequences of their actions, as they obstructed access to critical mental health care at the precise moment it was most necessary, thereby deepening and prolonging PLAINTIFF's injuries.

## SPECIFIC ALLEGATIONS FOR PLAINTIFFS

63. JOHN S.P. DOE:

   a. At all relevant times, PLAINTIFF was a minor male in the custody of the COUNTY and confined at RDC a juvenile detention facility operated and overseen by the COUNTY. PLAINTIFF was detained at RDC between approximately 2002-2003.

   b. Between approximately 2002-2003, when PLAINTIFF was between fifteen-sixteen years old, he was housed at Rancho Del Campo ("RDC"). While in custody, PLAINTIFF was under the direct supervision and control of COUNTY employees acting under color of law. The precise government identities of the supervisors and the individual staff member who abused PLAINTIFF are unknown to him at this time but ascertainable through discovery. The staff member who sexually abused PLAINTIFF outside in the yard when PLAINTIFF was returning from completing his assigned work duties, in the evening hours after "lights out," and under the pretext of conducting a "strip search."

22

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

c. Plaintiff recalls the following about the staff member who abused him at RDC:

    i. A shorter male with tan skin who appeared to be of Filipino descent with a shaved head, mustache, and glasses. He typically worked the evening shift.

       1. On at least fifteen occasions, this staff member sexually abused PLAINTIFF by isolating him, fondling and groping his genitals, and forcing him to perform oral sex. The abusive staff member attempted to anally rape PLAINTIFF on several occasions, but he was able to resist these rapes, which resulted in the abuser physically beating PLAINTIFF. These acts were committed in a custodial setting by a male employee of the COUNTY for the staff member's own sexual gratification.

       2. On occasion, the abusive staff member would happen to encounter PLAINTIFF alone, but most of the time his isolation of PLAINTIFF occurred in the presence of other staff members who typically worked in groups. When another staff member was present, the abusive staff member would take PLAINTIFF to a "blind spot" out of the detection of surveillance cameras while the other guards put the remaining detainees in their cells for "lights out."

       3. The abusive staff member isolated PLAINTIFF under the auspice of conducting a "search" without any legitimate basis, against COUNTY policies and procedures. PLAINTIFF recalls there was a distinct look and motion that the abusive staff member would make to him in front of others to indicate that the pretextual "search" was to occur, understanding he was about to

23

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

experience sexual abuse. The abusive staff member also came into his cell in the presence of his roommate, stating "come over and talk to me," during which he then isolated PLAINTIFF and sexually abused him.

4. The abusive staff member openly groomed PLAINTIFF. For example, during "snack time," the abuser sometimes told PLAINTIFF "if you come with me, you can get more food," where he then isolated PLAINTIFF and sexually abused him. PLAINTIFF would in fact receive additional snacks.

5. The abuser also promised that if PLAINTIFF complied with the sexual abuse he would get time off his sentence and be able to go home sooner. PLAINTIFF did in fact go home two weeks sooner than he was scheduled to without receiving any reason for the early release. He understood this early release as a "reward" for tolerating the abuse that was conditioned on his silence and submission to his abuser.

6. The abusive staff member also openly punished and retaliated against PLAINTIFF when he resisted or attempted to report the sexual abuse he was experiencing. When PLAINTIFF resisted being anally raped by the abusive staff member, he was subjected to 24-hour lockdowns in his cell (once for an entire weekend) where he was denied access to basic hygiene like showers and clean clothes and was restricted to eating meals in his cell. The staff member also instructed other staff members or detainees or personally inflicted physical beatings on PLAINTIFF after he resisted sexual abuse. PLAINTIFF

24

witnessed other detainees experiencing the same punishments, and as many as six other detainees disclosed to each other that they were experiencing sexual abuse. The detainees who physically abused PLAINTIFF at the direction of the abusive staff member threatened him directly that this would continue to happen if PLAINTIFF (or other detainees experiencing abuse) tried to resist or report the abuse. PLAINTIFF witnessed, understood, and believed that the various staff members who were sexually abusing detainees and witnessing it occurring were either actively protecting each other from accountability or knowingly looking the other way.

7. The abusive staff member himself also directly, repeatedly threatened PLAINTIFF against reporting the abuse. He would include both undefined threats like "you better not say anything" about the abuse, also explicitly threatened PLAINTIFF that he would be incarcerated for a longer duration of time if he came forward. The abusive staff member made clear that he had all of PLAINTIFF's personal information including where he and his family lived outside of the facility. PLAINTIFF has feared his entire life that his or his family's safety was in jeopardy and that his abuser was actively supervising PLAINTIFF's behavior to ensure he did not report the abuse once he was released.

8. PLAINTIFF nevertheless bravely reported the officer's sexual abuse both through filing written grievances and speaking with a "sergeant" or someone with a higher rank of authority directly. During an oral conversation with that supervisor, they laughed

25

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

in his face in response to his disclosure of sexual abuse. PLAINTIFF submitted several written grievances through the outlined process at the facility reporting the sexual abuse he was experiencing. No one ever followed up with him, investigated, or took any action to protect him from his abuser or provide him urgent medical care.

9. PLAINTIFF has only recently felt safe enough from the fear and threat of retaliation to both understand that what happened to him was not a part of his state-sanctioned criminal punishment but a crime in and of itself and to disclose the abuse to his legal team. Two main changes in his personal life that facilitated that transition in emotional stability were PLAINTIFF moving away from San Diego and the passage of time. PLAINTIFF has experienced financial and housing instability throughout his adulthood, but presently has some stability with his housing, and an emotionally supportive personal relationship with a girlfriend, which has helped him come forward.

10. It was not until PLAINTIFF saw advertisements on social media and television that identified there were many other children who experienced this sexual abuse at detention facilities in California that PLAINTIFF felt empowered enough to speak to an attorney. Prior to seeing these advertisements, PLAINTIFF felt like no one would believe him or think that what happened to him was illegal or wrong. Through learning that he was in fact one of hundreds if not thousands of children who were abused at California detention facilities, PLAINTIFF understood that

26

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

what he experienced was illegal and that he might actually be believed. It still took him several months to process that these advertisements were actually real and that he was not alone before he was able to muster the strength to actually come forward and try to speak with a legal team.

d. The abusive staff members and those who knew this was happening to PLAINTIFF but consciously turned a blind eye intended to cause PLAINTIFF to believe and did cause PLAINTIFF to believe that this sexual abuse was a state-sanctioned part of his criminal punishment. As a child, PLAINTIFF did not have the faculty to understand that what was happening to him was both wrong and a crime. As a detainee, he had no tools or power to successfully report what was happening to him when the individuals with authority over him were the ones inflicting the harm or sanctioning it to occur.

e. These assaults caused PLAINTIFF to experience tremendous shame, anger, and helplessness, forcing him repress memories of the assault as much as humanly possible. He struggles to process or recall the memories of the assaults to this day. PLAINTIFF is only now able to come forward with his account because he has learned that others are also seeking justice for abuses suffered at RDC and other juvenile detention facilities. Even upon first witnessing advertisements regarding other sexual abuse survivors of detention facilities, PLAINTIFF was in denial that the pursuit of justice was actually real.

f. The staff members used their authority, control over daily assignments, and isolation within the unit to coerce PLAINTIFF into sexual contact. The abuse occurred under the color of law, and PLAINTIFF — a child at the time—had no ability to refuse or report the abuse without fear of punishment or retaliation.

27

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

g.  PLAINTIFF is informed and believes, and thereon alleges, that prior to and during the period of abuse, the COUNTY knew or should have known that these staff members posed a risk of sexual misconduct to youth in custody.

h.  On information and belief, the staff members had previously exhibited red flag behaviors or generated concern among other youth or staff, including spending time alone with minors in staff-only areas, assigning unusual cleaning duties, or violating professional boundaries, for example.

i.  Despite this, the COUNTY failed to take reasonable steps to investigate, monitor, supervise, or restrict the staff member's interactions with youth detainees. No safeguards were put in place to prevent these staff members from isolating minors or abusing their positions of authority.

j.  The COUNTY's failure to supervise staff, enforce protective policies, and respond to early warning signs reflects a broader custom, policy, and practice of deliberate indifference to the safety and dignity of children in its juvenile detention facilities.

k.  As a direct proximate result of DEFENDANTS' physical and sexual abuse PLAINTIFF has experienced ongoing and persistent mental, emotional, and psychological problems, including, but not limited to: anxiety; depression; feelings of helplessness; insomnia; sexual identity issues; lowered self-esteem; moodiness; difficultly with meaningfully interacting with others and in intimate relationships; loss of trust and control issues with any person in a position of authority; flashbacks, nightmares, and intrusive thoughts; stress; nervousness; fear; embarrassment; shame; and loss of enjoyment of life, among others.

64.  Despite these circumstances, officers who witnessed red flag grooming and isolating behaviors failed to investigate, failed to report the incidents, failed to separate PLAINTIFFS from the staff members abusing them, and failed to summon medical or

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

psychological care for PLAINTIFFS. Their failure to intervene despite encountering circumstances amounting to red flags of sexual abuse constitutes deliberate indifference to a known risk of constitutional harm in violation of 42 U.S.C. § 1983 and further constitutes a breach of the mandatory reporting duty imposed by California Penal Code § 11166.

65.    The officers' decision to observe circumstances strongly indicative of sexual abuse and to consciously turn a blind eye without investigation, report, or protective action constitutes ratification of the male staff members' unlawful conduct within the meaning of California law. The JOHN/JANE DOE officers were COUNTY employees acting within the course and scope of their employment.

66.    Such sexual conduct was done for INDIVIDUAL DEFENDANTS' own sexual gratification and perversion, and performed on and without PLAINTIFF's consent, as PLAINTIFF was a minor, and thus was unable to give valid, legal consent to such predatory acts.

67.    DEFENDANTS and agents and/or employees failed to take reasonable steps and implement reasonable safeguards to avoid acts of unlawful sexual conduct, including preventing abuse of PLAINTIFF by ABUSERS and DOES 51-100, avoiding placement of the INDIVIDUAL DEFENDANTS in a function or environment in which direct contact with, and complete control of, minors is an inherent part of that function or environment. Instead, DEFENDANTS ignored and concealed the sexual abuse, and sexual harassment, of PLAINTIFF and others. DEFENDANTS and agents and/or employees failed to properly supervise INDIVIDUAL DEFENDANTS at RDC and other juvenile probation facilities, which led to many minors, including PLAINTIFF, being repeatedly sexually abused, molested, and harassed.

68.    DEFENDANTS and agents and/or employees failed to take reasonable steps and implement reasonable safeguards to prevent acts of sexual conduct by INDIVIDUAL DEFENDANTS, including, but not limited to, permitting a "safe haven environment" in which INDIVIDUAL DEFENDANTS were given opportunities and locals to isolate, control, and directly contact minors for their own sexual gratification without supervision or monitoring.

29

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

69.    Had DEFENDANTS and agents and/or employees properly supervised and controlled the environment, instead of ignoring and concealing the sexual abuse, molestation, and harassment, PLAINTIFF contends that the abuse would have been avoided and/or detected thereby preventing the INDIVIDUAL DEFENDANTS from sexual assaulting minors for their own sexual gratification.

70.    The improper handling of sexual abuse, molestation, and harassment as alleged was the proximate cause of PLAINTIFF's injuries due to a systemic issue within DEFENDANTS' patterns and practices of failing to provide adequate protection to the minors in their care and mishandling abuse allegations.

71.    PLAINTIFF's claims arise from a common and continuing policy, custom, and practice maintained by the COUNTY at RDC and other juvenile detention facilities owned and managed by COUNTY across the entire relevant time period. The volume and variety of lawsuits and reports of sexual abuse at RDC and other facilities in COUNTY and California that allege materially similar circumstances of abuse—involving isolation of minors, exploitation of authority, absence of adequate supervision or monitoring, failure to investigate red flags or complaints, and a culture of intimidation that suppressed reporting—itself constitutes direct evidence of a longstanding, systemic custom of deliberate indifference. The pattern across Plaintiffs demonstrates that the COUNTY's unconstitutional policies were not isolated or sporadic but rather deeply entrenched and persistent, making joinder appropriate and necessary to establish the full scope of the COUNTY's liability.

72.    In subjecting PLAINTIFF to sexual abuse and harassment, DEFENDANTS and agents and/or employees acted willfully and maliciously with the intent to harm PLAINTIFF, and in conscious disregard of PLAINTIFF's rights, so as to constitute malice and/or oppression under *Civil Code* § 3294.

73.    PLAINTIFF is informed and believes and thereon alleges that specifically, the DEFENDANTS and agents and/or employees acted in concert, and under their authority as a

30

correctional and rehabilitative residential center within the COUNTY'S juvenile justice system, with reckless disregard for the concern of the minors in its charge. DEFENDANTS and agents and/or employees acted intentionally in creating an environment that harbored molesters, placed their vulnerable minor residents at inherent and devastating risk of harm in order to maintain a façade of normalcy and to maintain the funding of the COUNTY and DOES 1-50.

74.    The safety of the children entrusted to and confined at RDC was devastatingly compromised due to DEFENDANTS' and agents and/or employees' desire to maintain the status quo and circumvent any public scrutiny for their misconduct. These willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the DEFENDANTS and agents and/or employees, thereby entitling them to punitive damages against only INDIVIDUAL DEFENDANTS, et al. according to proof.

75.    DEFENDANTS' and agents and/or employees' acts and/or omissions to acts in the commission of the sexual abuse was done by agents and/or employees who prevented and/or deterred the minor victim from coming forward through threats of intimidation and violence, and therefore COUNTY and DOES 1-50 are directly responsible for covering up the egregious abuse alleged herein.

**FIRST CAUSE OF ACTION**

**SEXUAL ASSAULT**

**(Against All Individual Defendants)**

76.    PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

77.    INDIVIDUAL DEFENDANTS in committing the acts herein alleged, intended to subject PLAINTIFF to sexual abuse and molestation while PLAINTIFF and others were confined to RDC all while they acted in the course and scope of their agency/employment.

78.    In so doing, they intended to cause harmful or offensive contact with PLAINTIFF's person, and/or intended to put PLAINTIFF in imminent apprehension of such contact.

31

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

79. INDIVIDUAL DEFENDANTS placed PLAINTIFF in imminent apprehension of harmful or offensive contact, and PLAINTIFF actually and reasonably believed that INDIVIDUAL DEFENDANTS had the ability to make harmful or offensive contact with PLAINTIFF's person.

80. PLAINTIFF was a minor who did not consent to INDIVIDUAL DEFENDANTS' intended harmful or offensive contact with PLAINTIFF's person, or to their intent to place PLAINTIFF in imminent apprehension of such contact.

81. In committing the acts herein alleged, INDIVIDUAL DEFENDANTS violated PLAINTIFF's rights, pursuant to *Civil Code* § 43, of protection from bodily restraint or harm, and from personal insult.

82. In committing the acts herein alleged, INDIVIDUAL DEFENDANTS violated and breached their duty, pursuant to *Civil Code* § 1708, to abstain from injuring PLAINTIFF's person or infringing upon PLAINTIFF's rights.

83. As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, individually, jointly, and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

84. INDIVIDUAL DEFENDANTS' acts also constitute conduct intended by them to cause injury to PLAINTIFF and despicable, malicious, and/or oppressive conduct that is carried on with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a). PLAINTIFF is therefore entitled to punitive damages against only INDIVIDUAL DEFENDANTS, et al. in an amount to be determined by proof at trial.

## SECOND CAUSE OF ACTION

### SEXUAL BATTERY (CIVIL CODE § 1708.5)

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**(Against All Individual Defendants)**

85.    PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

86.    At all times herein referenced, INDIVIDUAL DEFENDANTS were employees of the COUNTY, during which time INDIVIDUAL DEFENDANTS were acting within the scope of their agency and employment.

87.    During PLAINTIFF's confinement at RDC, INDIVIDUAL DEFENDANTS intentionally, recklessly, and wantonly did acts which were intended to, and did, result in harmful and offensive contact with intimate parts of the PLAINTIFF'S person, during PLAINTIFF's time at RDC while they acted in the course and scope of their agency or employment with COUNTY and DOES 1-50 in violation of *Penal Code* §§ 243.4(a) and 289.6.

88.    Further, PLAINTIFF did not consent (nor could he consent) to the harmful contact with his person.

89.    As a result of INDIVIDUAL DEFENDANTS complete control over PLAINTIFF, by color of authority, PLAINTIFF's physical confinement and detention, the PLAINTIFF's vulnerability, the PLAINTIFF's mental and emotional state, and the PLAINTIFF's young age, PLAINTIFF did not, and could not, give meaningful consent to such acts. INDIVIDUAL DEFENDANTS breached their duty to PLAINTIFF.

90.    As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, individually, jointly, and severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

91.    INDIVIDUAL DEFENDANTS' acts also constitute conduct intended by them to cause injury to PLAINTIFF and despicable, malicious, and oppressive conduct that is carried on

33

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a). PLAINTIFF is therefore entitled to punitive damages against only INDIVIDUAL DEFENDANTS, et al., in an amount to be determined by proof at trial.

## THIRD CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Individual Defendants)

92.    PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

93.    At the time of the incidents described above, INDIVIDUAL DEFENDANTS' conduct as alleged herein was beyond the bounds of decency accepted within society and was intentional, outrageous, malicious, and committed for the purpose of causing PLAINTIFF to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress, or done in reckless disregard of the probability of causing PLAINTIFF to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress.

94.    Each of the INDIVIDUAL DEFENDANTS were in a position of authority, trust, influence, and persuasion over PLAINTIFF and responsible for maintaining a special relationship.

95.    INDIVIDUAL DEFENDANTS' abuse of PLAINTIFF was an abuse of their authority as an agent and/or employee of COUNTY and performed while in the course and scope of their employment under color of law.

96.    PLAINTIFF's trust in INDIVIDUAL DEFENDANTS for their safety and wellbeing, turned to fear and intimidation by virtue of DEFENDANTS' and agents and/or employees' wrongful conduct.

97.    PLAINTIFF contends said misconduct was authorized, ratified, adopted and/or approved of by DEFENDANTS.

98.    INDIVIDUAL DEFENDANTS' conduct as alleged herein was beyond the bounds of decency accepted within society and was intentional, outrageous, malicious, and committed for

34

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

the purpose of causing PLAINTIFF to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress, or done in reckless disregard of the probability of causing PLAINTIFF to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress. INDIVIDUAL DEFENDANTS breached their duty to PLAINTIFF.

99.    As a direct and proximate result of the conduct of INDIVIDUAL DEFENDANTS, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing and permanent. PLAINTIFF is entitled to damages in an amount to be determined by proof at trial.

100.    INDIVIDUAL DEFENDANTS' conduct described herein was intentional and malicious and done for the purpose of causing, or with substantial certainty, that such conduct would cause PLAINTIFF to suffer humiliation, mental anguish, and emotional and physical distress.

101.    INDIVIDUAL DEFENDANTS acted willfully and maliciously with the intent to harm PLAINTIFF, and in conscious disregard of PLAINTIFF'S rights, so as to constitute malicious and/or oppression under *Civil Code* section 3294 thereby entitling them to punitive damages against only INDIVIDUAL DEFENDANTS, et al. according to proof.

## FOURTH CAUSE OF ACTION

## VIOLATION OF CIVIL CODE § 52.1

### (Against All Individual Defendants)

102.    PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

103.    PLAINTIFF alleges that at all times mentioned herein, the conduct of DEFENDANTS and agents and/or employees constituted interference by threats, intimidation, or coercion, or attempted interference, with the exercise of enjoyment by PLAINTIFF of rights

35

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

secured by the Constitution of law of the United States, or secured by the Constitution or laws of the State of California, including interference with their right to be secure in their person and free from unreasonable and unlawful search and seizure under the Fourth Amendment and Cal. Const. Art. I sec. 13 as well as Cal. Civil Code § 43, and the right of protection from bodily restraint and improper touching.

104. PLAINTIFF also contends that DEFENDANTS' and agents and/or employees' actions, as alleged herein, interfered with PLAINTIFF's right to free speech, freedom from discrimination on the basis of race and sex, and freedom from cruel and unusual punishment as afforded by the United States and California Constitutions through violence, threats of violence, intimidation, and/or coercion.

105. DEFENDANTS' actions and willful omissions, and those of their agents and/or employees as alleged herein, interfered with and will continue to interfere with PLAINTIFF's constitutional rights to receive an immediate response to their reports of sexual assault, molestation, and harassment by DEFENDANTS and their agents and/or employees.

106. DEFENDANTS and agents and/or employees oppressive and unlawful conduct in ignoring, concealing, threatening, intimidating, retaliating against, and ultimately suppressing PLAINTIFF's complaints of being sexually abused further violated PLAINTIFF's constitutional protections under protections under California and the United States.

107. DEFENDANTS and agents and/or employees, knowingly, with gross negligence, and deliberate indifference to the state Constitutional rights of citizens, maintain and permit an official policy and custom of permitting the occurrence of the types of wrongs set forth hereinabove and hereafter, including violation of PLAINTIFF's Fourth and Fourteenth Amendments to be free from unlawful sexual abuse.

108. PLAINTIFF contends that DEFENDANTS and agents and/or employees failed to adhere to their own policies and procedures and/or failed to have any in the first place to prevent this harm, including, but not limited to, the deliberate indifferent training of its officers and/or

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

employees in conducting, training, monitoring and supervising unlawful violations of professional misconduct by way of color of authority such as:

   a. Physical assault and abuse of inmates by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees that were subsequently poorly investigated and/or covered up by DEFENDANTS and agents and/or employees.

   b. Intentional violation of DEFENDANTS' and agents and/or employees' supervision policies and procedures by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees in order to avoid evidencing improper assault and abuse on citizens by DEFENDANTS and agents and/or employees.

   c. Sexual harassment, extortion, and intimidation by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees.

   d. Abuse and assault against minors, minorities, and citizens with disabilities by officers, supervisors, and/or other higher-ranking officers with final policymaking authority for DEFENDANTS and agents and/or employees as part of an accepted practice that were subsequently poorly investigated and/or covered up by DEFENDANTS and agents and/or employees to avoid legal consequences.

   e. Sexual abuse and assault against inmates in custody by officers, supervisors, and/or other higher-ranking officers with policymaking authority for DEFENDANTS and agents and/or employees as defined as cruel and unusual punishment deeply offensive to human dignity and not part of the penalty that criminal offenders pay for their offenses against society.

37

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

f.  Failure to report or investigate allegations of sexual misconduct by COUNTY who was required to do so, both under its own policies and procedures, as well as under federal mandate by the Fourteenth Amendment and California law.

109.  As a direct cause of DEFENDANTS and agents and/or employees' wrongful conduct intended to and actually interfered with PLAINTIFF's Constitutional Rights to be free from (a) gender discrimination, (b) free speech, (c) cruel and unusual punishment, and (d) Due Process.

110.  PLAINTIFF's rights pursuant to California *Civil Code* § 52.1 were violated, causing injuries and damages in an amount to be proved at the time of trial.

111.  Due to the conduct of DEFENDANTS and agents and/or employees, and each of them, PLAINTIFF has been required to incur attorneys' fees and will continue to incur attorneys' fees, and pursuant to California *Civil Code* § 52.1 are entitled to recovery of said fees.

112.  In addition, DEFENDANTS and agents and/or employees acted willfully and maliciously with the intent to harm PLAINTIFF, and in conscious disregard of PLAINTIFF's rights, entitling PLAINTIFF to punitive and/or exemplary damages against only INDIVIDUAL DEFENDANTS, et al., attorneys' fees, other damages pursuant to California *Civil Code* § 52(b)(1), and temporary restraining order or a preliminary or permanent injunction ordering DEFENDANTS and agents and/or employees to refrain from conduct or activities as alleged herein, stating "VIOLATION OF THIS ORDER IS A CRIME PUNISHABLE UNDER SECTION 422.77 OF THE PENAL CODE," and other such relief as the Court deems proper.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

### (Against All Defendants)

113.  PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above and below as though fully set forth and brought in this cause of action.

38

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

114.    This cause of action is brought pursuant to Government Code § 815.6, which imposes liability on public entities for injuries proximately caused by their failure to discharge mandatory duties imposed by enactment. DEFENDANTS owed PLAINTIFF such mandatory duties under Welfare and Institutions Code §§ 209, 210, 850–852, the California Penal Code §§ 11164–11166 (the Child Abuse and Neglect Reporting Act), and California Code of Regulations, Title 15, including but not limited to §§ 1320–1324, 1350–1354, 1361–1362, 1430–1432, 1453, and 1510. These duties were specifically intended to protect detained minors from the risk of sexual abuse, neglect, and harm.

115.    DEFENDANTS and agents and/or employees, and each of them, had a duty through their special relationship with PLAINTIFF to protect them from being sexually abused under the color of authority by COUNTY employees and/or agents in the course and scope of their agency. DEFENDANTS and agents and/or employees owed PLAINTIFF a special fiduciary relationship that law enforcement and/or persons in a position of authority dealing with vulnerable minors committed to their custody, owe to protect them from harm. The foregoing statutory duties establish a mandatory duty of care within the meaning of Government Code § 815.6. DEFENDANTS also owed PLAINTIFF duties arising from their special relationship, which supplements, but does not replace, the mandatory statutory duties described herein.

116.    At all times prior to, during and subsequently, DEFENDANTS and agents and/or employees knew and/or should have known that INDIVIDUAL DEFENDANTS were planning, conspiring and/or committing sexual abuse on PLAINTIFF and others who had been entrusted to them and instructed to provide for their safety, care, and welfare.

117.    DEFENDANTS and agents and/or employees, and each of them, further hid the conduct from PLAINTIFF, his guardians and parents, the public and other law enforcement agencies as part of a systematic scheme of fraud and concealment to prevent others from learning the truth of the ongoing and pervasive sexual abuse occurring within the confined walls of RDC with defenseless minors.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

118.    PLAINTIFF alleges that DEFENDANTS, including their agents and employees, breached mandatory duties to investigate and act upon all reports and indications of sexual abuse. DEFENDANTS further failed to provide a safe and secure environment in which PLAINTIFFS could report such abuse without threats, intimidation, violence, or retaliation—despite having a duty to protect them from harm by those charged with their care and supervision.

119.    At all times relevant herein, under California Welfare and Institutions Code § 850, each county's board of supervisors had a mandatory duty to provide and maintain a "suitable house" or facility for the detention of wards and dependent children of the juvenile court. Such a facility was expressly not to be deemed or treated as a penal institution. Welfare and Institutions Code § 851 further required that any juvenile hall "shall be a safe and supportive homelike environment."

120.    DEFENDANTS, including their agents and employees, breached these mandatory statutory duties and at all times relevant herein failed to provide a "suitable house" and to ensure a "safe and supportive homelike environment" as required by law, instead exposing PLAINTIFF and others, and each of them, to a safe haven for sexual abuse where predators were allowed to openly prey upon  defenseless children who were to have been provided with a safe environment that promoted their rehabilitation.

121.    DEFENDANTS breached mandatory duties under Title 15, § 1324, which required maintaining and updating a written policy and procedures manual covering all applicable regulations, including procedures prohibiting sexual abuse and retaliation. DEFENDANTS failed to implement and/or meaningfully enforce such policies, creating conditions where rampant childhood sexual abuse could occur and remain concealed.

122.    DEFENDANTS violated mandatory duties under Title 15, § 1350, which required written intake and admission procedures that included screening for health, behavioral, and safety risks. DEFENDANTS failed to conduct adequate intake screenings, failing to identify or address risks of sexual victimization or aggression.

40

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

123.    PLAINTIFF further alleges that DEFENDANTS, including their agents and employees, breached mandatory duties imposed by Welfare and Institutions Code § 209, which required annual inspections of juvenile facilities by the juvenile court and biennial inspections by the Board of Corrections. DEFENDANTS failed to ensure or conduct such inspections, failed to remedy cited deficiencies, and allowed unsafe and unmonitored conditions to persist.

124.    PLAINTIFF alleges that DEFENDANTS, and each of them, violated mandatory duties under Welfare and Institutions Code § 852 by failing to ensure that juvenile halls remained under the management and control of the probation officer in compliance with state law. DEFENDANTS failed to supervise staff adequately, permitted unqualified or untrained individuals to exercise control over minors, and failed to maintain necessary operational oversight.

125.    PLAINTIFF further alleges that DEFENDANTS violated mandatory intake procedures required by California Code of Regulations, Title 15, § 1350, by failing to conduct required health and developmental screenings, failing to provide secure property storage, and failing to offer prompt communication opportunities to family or counsel. These omissions foreseeably exposed PLAINTIFF to harm, neglect, and abuse.

126.    PLAINTIFF alleges that DEFENDANTS breached mandatory duties under California Code of Regulations, Title 15, § 1320, which required appointment of a qualified superintendent and properly screened, trained, and cleared staff. DEFENDANTS knowingly or negligently employed staff without required background checks, medical clearances, or training in child supervision and safety, thereby creating an unreasonable risk of harm to PLAINTIFF.

127.    PLAINTIFF alleges that DEFENDANTS violated mandatory duties under Welfare and Institutions Code § 210 by failing to implement and maintain operational standards consistent with those set forth by the Board of Corrections for juvenile halls. DEFENDANTS failed to adhere to minimum standards for staffing, safety, programming, health care, sanitation, and capacity limits, thereby endangering the well-being of PLAINTIFF and others and exposing them to a

41

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

sexual assault safe haven where predation thrived and resistance to such egregious conduct was punished and silenced.

128.    DEFENDANTS further breached their statutory duties by failing to establish, implement, and enforce operational policies and procedures necessary to ensure that all mandated reporters employed in their facilities would timely report known or reasonably suspected child abuse as required by Penal Code §§ 11164–11166. These omissions violated DEFENDANTS' obligations to operate juvenile detention facilities in compliance with the Child Abuse and Neglect Reporting Act and created conditions in which abuse could occur and continue without detection or intervention.

129.    At all times alleged herein, DEFENDANTS and agents and/or employees had a mandated reporting duty imposed by California Penal Code § 11166 to report child abuse whenever they "ha[ve] knowledge of or observe a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." DEFENDANTS and agents and/or employees, while in the course and scope of their employment were mandated reporters as probation officers, parole officers, employees of county probation departments, employees or administrators of residential care facilities, including juvenile detention, custodial officers and/or youth correctional officers working in juvenile facilities within the meaning of the Child Abuse and Neglect Reporting Act (CANRA), which is contained within California Penal Code §§ 11164, 11165, 11166.

130.    By failing to report the continuing harassment and abuse, which DEFENDANTS and each of them knew or should have known, and by ignoring the fulfillment of the mandated compliance with the reporting requirements provided under California Penal Code § 11166, DEFENDANTS and agents and/or employees created the risk and danger contemplated by the Child Abuse and Neglect Reporting Act, and as a result, unreasonably and wrongfully exposed PLAINTIFF and other minors to sexual harassment and abuse.

42

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

131.    PLAINTIFF was a member of the class of persons for whose protection California Penal Code § 11166 was specifically adopted to protect.

132.    Had DEFENDANTS and agents and/or employees adequately reported the abuse and harassment of PLAINTIFF and other minors as required by California Penal Code § 11166, further harm to PLAINTIFF and other minors would have been avoided.

133.    As a direct and proximate result of DEFENDANTS' and agents and/or employees' failure to follow the mandatory reporting requirements of California Penal Code § 11166, DEFENDANTS and agents and/or employees wrongfully denied PLAINTIFF and other minors, the intervention of child protection services. Such public agencies would have changed the then-existing arrangements and conditions that provided the access and opportunities for the abuse and sexual harassment of PLAINTIFF by INDIVIDUAL DEFENDANTS.

134.    DEFENDANTS' breaches of these mandatory statutory duties, both individually and collectively, constitute violations of duties imposed by enactment within the meaning of Government Code § 815.6, proximately causing the injuries and damages described herein.

135.    The physical, mental, and emotional damages and injuries resulting from the sexual abuse and harassment of PLAINTIFF by INDIVIDUAL DEFENDANTS, was the type of occurrence and injuries that the Child Abuse and Neglect Reporting Act was designed to prevent.

136.    As a result, DEFENDANTS and agents and/or employees failure to comply with the mandatory reporting requirements of California Penal Code § 11166 also constituted a per se breach of DEFENDANTS' and agents and/or employees' duties to PLAINTIFF.

137.    DEFENDANTS individually, jointly, and/or severally, and agents and/or employees breached their duty of care to PLAINTIFF which was the direct and proximate cause of PLAINTIFFS sustaining severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future. The

43

injuries suffered by Plaintiff are substantial, continuing, and permanent. Plaintiff is entitled to damages in an amount to be determined by proof at trial.

138.    DEFENDANTS and agents and/or employees' acts also constitute conduct intended by them to cause injury to PLAINTIFF and despicable, malicious, and/or oppressive conduct that is carried on with willful and conscious disregard for the rights and safety of others in direct violation of *Civil Code* section 3294, subdivision (a). Plaintiff is therefore entitled to punitive damages against only INDIVIDUAL DEFENDANTS, et al., in an amount to be determined by proof at trial.

**SIXTH CAUSE OF ACTION**

**NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION**

**(Against All Defendants)**

139.    PLAINTIFF re-alleges and incorporates by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

140.    This cause of action is brought pursuant to Government Code § 815.6, which imposes liability on public entities for injuries proximately caused by their failure to discharge mandatory duties imposed by enactment. DEFENDANTS owed PLAINTIFF mandatory duties under Welfare and Institutions Code § 210 and California Code of Regulations, Title 15, including but not limited to §§ 1320–1324, which established requirements for the selection, background investigation, training, supervision, and retention of qualified staff in juvenile detention facilities. DEFENDANTS also had duties under the Child Abuse and Neglect Reporting Act, Penal Code §§ 11164–11166, to train staff regarding their obligations to report known or suspected abuse.

141.    For clarity, this cause of action asserts two related but distinct theories: (a) failure to screen, hire, and retain qualified and suitable staff as required by law; and (b) failure to train and supervise staff regarding their mandatory obligations to protect and report abuse of minors.

142.    PLAINTIFF alleges that at all times mentioned herein, the INDIVIDUAL DEFENDANTS were agents and employees of COUNTY and performed the acts herein while in

44

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

the course and scope of their agency and employment at the time of subject sexual abuse. Moreover, PLAINTIFF contends that said misconduct was authorized, ratified, adopted, and/or approved by DEFENDANTS and agents and/or employees.

143.    PLAINTIFF also contends that COUNTY is vicariously liable for the tortious sexual acts of other DEFENDANTS and agents and/or employees, and each of them, flowing from their employment with DEFENDANTS and agents and/or employees while acting in the course and scope of their employment as it: (1) may deter recuring similar misconduct by incentivizing those in authority to exercise greater vigilance; (2) may ensure more reliable compensation for victims; and (3) may equitably distribute the loss among those who benefit from the County's exercise of police power.

144.    At all times relevant herein, DEFENDANTS, and each of them, had a mandatory duty under California Welfare and Institutions Code § 210 to operate and maintain juvenile detention facilities in accordance with minimum standards adopted by the Board of Corrections. These regulations, codified in Title 15 of the California Code of Regulations, imposed binding requirements on DEFENDANTS to ensure the safety, health, and welfare of detained minors, including specific duties to prevent, detect, respond to, and report sexual abuse.

145.    DEFENDANTS, and each of them, breached mandatory duties imposed by California Code of Regulations, Title 15, § 1320, which required the appointment of qualified staff with appropriate health clearance and background checks. DEFENDANTS failed to ensure staff were adequately screened and qualified, thereby enabling unfit individuals to supervise and abuse detained youth.

146.    DEFENDANTS, and each of them, violated mandatory duties under Title 15, § 1322, which required employing only personnel meeting minimum standards set by law and the Board of Corrections, including suitability for work with minors. DEFENDANTS hired, retained, or assigned unqualified or unvetted staff who posed a foreseeable risk of sexual abuse.

45

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

147.    DEFENDANTS breached mandatory duties under Title 15, § 1323, which required a written staff development and training plan providing for pre-service orientation and annual in-service training. DEFENDANTS failed to adopt, implement, or enforce such a plan, resulting in staff untrained in abuse prevention, supervision, trauma-informed care, and mandatory reporting.

148.    DEFENDANTS violated mandatory duties under Title 15, § 1321, which required maintaining sufficient on-duty staff at all times to ensure youth safety, including minimum staffing ratios and continuous supervision. DEFENDANTS failed to ensure adequate staffing levels, enabling opportunities for sexual assault by staff and other residents.

149.    DEFENDANTS breached mandatory duties under Title 15, § 1352, which required classifying minors based on safety factors such as age, maturity, and behavior. DEFENDANTS failed to implement or enforce classification procedures to separate vulnerable youth from aggressive or sexually predatory residents.

150.    DEFENDANTS violated mandatory duties under Title 15, § 1353, which required informing youth, upon orientation, of their rights, including the facility's prohibition on sexual abuse and procedures for reporting it without retaliation. DEFENDANTS failed to adequately inform or protect PLAINTIFF and others, depriving them of the ability to safely report abuse.

151.    DEFENDANTS breached mandatory duties under Title 15, § 1354, which required separating youth when necessary to protect them from assault or intimidation. DEFENDANTS failed to separate aggressive or abusive residents and/or staff from vulnerable youth, enabling repeated acts of childhood sexual abuse.

152.    DEFENDANTS violated mandatory duties under Title 15, § 1430, which required immediate health screening upon intake to identify medical, mental, or behavioral conditions posing safety risks. DEFENDANTS failed to conduct meaningful screenings that would have revealed vulnerability to sexual victimization or prior abuse history.

153.    DEFENDANTS breached mandatory duties under Title 15, § 1432, which required a comprehensive health assessment within 96 hours, including screening for recent trauma or

46

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

sexual abuse. DEFENDANTS failed to identify or respond to evidence of prior and/or ongoing sexual abuse suffered by PLAINTIFF.

154. The agents and/or employees of DEFENDANTS have a special relationship with PLAINTIFF, which imposes upon them an affirmative duty to take reasonable steps to protect them from reasonably foreseeable risks of harm.

155. INDIVIDUAL DEFENDANTS were in a position of authority, trust, influence, and persuasion over PLAINTIFF and others as employees and/or agents of COUNTY, responsible for maintaining the special relationship with the general public, including PLAINTIFF.

156. Title 15, §§ 1322 and 1323, required DEFENDANTS to maintain and implement a written staff development and training plan addressing all duties imposed by law, including training in the recognition, prevention, and mandatory reporting of child abuse and neglect. DEFENDANTS breached these duties by failing to train employees to understand or comply with their statutory obligations under Penal Code §§ 11164–11166, foreseeably enabling the concealment of ongoing abuse.

157. INDIVIDUAL DEFENDANTS' sexual abuse of PLAINTIFF was an abuse of their authority as an agent and/or employee of COUNTY and DOES 1-50.

158. The agents and/or employees of DEFENDANTS failed to use reasonable care in hiring and supervising their employees and/or agents who had actual and constructive knowledge and/or notice that the manner and means of hiring, training, supervising and retaining agents and/or employees created a dangerous environment for the general public, including PLAINTIFF, and INDIVIDUAL DEFENDANTS' acts and propensity to commit such acts. Nonetheless, COUNTY and DOES 1-50's agents and/or employees took no remedial steps to protect the public, including PLAINTIFF.

159. DEFENDANTS deliberately disregarded their mandatory duties under Title 15, §§ 1322 and 1323, by hiring, retaining, and deploying unqualified and untrained staff in positions of authority over children. DEFENDANTS' systemic failure to implement required staff screening

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

and training procedures created an environment where staff were unprepared or unwilling to recognize, prevent, or report sexual abuse, thereby directly contributing to the harm suffered by PLAINTIFF.

160. At all times relevant herein, DEFENDANTS and agents and/or employees had a mandated reporting duty imposed by California Penal Code § 11166 to report child abuse whenever they "ha[ve] knowledge of or observe a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." DEFENDANTS and agents and/or employees, while in the course and scope of their employment were mandated reporters as probation officers, parole officers, employees of county probation departments, employees or administrators of residential care facilities, including juvenile detention, custodial officers and/or youth correctional officers working in juvenile facilities within the meaning of the Child Abuse and Neglect Reporting Act (CANRA), which is contained within California Penal Code §§ 11164, 11165, 11166.

161. DEFENDANTS' and agents and/or employees' mandated duties owed to PLAINTIFF pursuant to California Penal Code §§ 11164, 11165, 11166 included contacting law enforcement, the California Department of Social Services, and/or other appropriate administrative agencies to report suspected child abuse pursuant to the Child Abuse and Neglect Reporting Act.

162. Despite receiving this notice and/or witnessing firsthand INDIVIDUAL DEFENDANTS proclivity to engage in the sexually abusive behavior against PLAINTIFF and others at RDC, DEFENDANTS and/or agents and employees failed to perform their mandatory duties by failing to train the agents and/or employees of DEFENDANTS of their mandated duty to contact law enforcement, the California Department of Social Services, or any other administrative agency as was mandated pursuant to the Child Abuse and Neglect Reporting Act.

163. The agents and/or employees of DEFENDANTS knew or should have known that employment practices which failed to screen or investigate agents and/or employees with

48

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

propensity to commit sexual abuse, or improper touching would create a dangerous environment for PLAINTIFFS.

164.    The agents and/or employees of COUNTY and DOES 1-50 knew or should have known about INDIVIDUAL DEFENDANTS' and DOES 51-100's sexual abuse and improper touching of persons such as PLAINTIFF and others. Despite such knowledge, DEFENDANTS' agents and/or employees ignored and failed to investigate or remedy INDIVIDUAL DEFENDANTS' and DOES 51-100's conduct in any way, thereby placing the community at risk of harm, including PLAINTIFF.

165.    DEFENDANTS' breaches of these mandatory duties, including those imposed by Welfare and Institutions Code § 210, Title 15 of the California Code of Regulations, and Penal Code §§ 11164–11166, constitute violations of duties imposed by enactment within the meaning of Government Code § 815.6.

166.    Despite such knowledge, DEFENDANTS negligently hired, retained, and supervised, and failed to properly train INDIVIDUAL DEFENDANTS and DOES 51-100, failing to exercise reasonable care in preventing foreseeable harm to PLAINTIFF and others.

167.    The agents and/or employees of COUNTY and DOES 1-50 owed PLAINTIFF a duty to protect him from unlawful sexual abuse and touching. COUNTY and DOES 1-50's agents and/or employees knew or should have known that failure to properly supervise their personnel and investigate their conduct, would subject persons, including PLAINTIFF, to an unreasonable risk of being unlawfully sexually abused and touched. DEFENDANTS breached their duty of care to PLAINTIFF.

168.    As a direct and proximate result of negligent hiring and/or supervision of COUNTY and DOES 1-50's agents and/or employees, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in

49

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent. Plaintiff is entitled to damages in an amount to be determined by proof at trial.

## SEVENTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

#### (Against All Defendants)

169. PLAINTIFF re-alleges and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

170. The agents and/or employees of DEFENDANTS have, with their citizens, a special relationship, which imposes upon them an affirmative duty to take reasonable steps to protect their citizens from reasonably foreseeable risks of harm.

171. PLAINTIFF alleges that at all times mentioned herein, INDIVIDUAL DEFENDANTS and DOES 51-100 were agents and/or employees of COUNTY and DOES 1-50, inclusively, and that INDIVIDUAL DEFENDANTS and DOES 51-100 performed the acts herein while in the course and scope of their agency and employment at the time of the subject incident.

172. Moreover, PLAINTIFF contends said misconduct was authorized, ratified, adopted, and/or approved by DEFENDANTS and agents and/or employees, and that liability flows from their employment with COUNTY and DOES 1-50 while acting in the course and scope of employment as it (1) may deter recuring similar misconduct by incentivizing those in authority to exercise greater vigilance; (2) may ensure more reliable compensation for victims; and (3) may equitably distribute the loss among those who benefit from the County's exercise of police power.

173. INDIVIDUAL DEFENDANTS and DOES 51-100 were in a position of authority, trust, influence, and persuasion over PLAINTIFF, INDIVIDUAL DEFENDANTS and DOES 51-100 were an agent and/or employee of COUNTY and DOES 1-50, responsible for maintaining the special relationship with the community, including PLAINTIFF.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

174.    INDIVIDUAL DEFENDANTS and DOES 51-100's sexual abuse of PLAINTIFF and others was therefore also an abuse of authority as an agent and/or employee of COUNTY and DOES 1-50.

175.    The agents and/or employees of DEFENDANTS breached their duty to protect its citizens, including PLAINTIFF, from reasonably foreseeable risks of sexual abuse when it has failed to use reasonable care in hiring and/or supervising and/or training its agents and/or employees from reasonably foreseeable risks of sexual abuse and touching and detect and report reasonable suspicion of sexual abuse and improper touching.

176.    DEFENDANTS and agents and/or employees knew and/or should have known that its conduct as described in this complaint was likely to cause its citizens, including PLAINTIFF, to suffer severe emotional distress.

177.    As a direct and proximate result of this negligent conduct of DEFENDANTS and agents and/or employees' and as a direct proximate result of the negligent conduct of DEFENDANTS, individually, jointly, and/or severally, PLAINTIFF sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability in the past, present, and future. The injuries suffered by PLAINTIFF are substantial, continuing, and permanent. Plaintiff is entitled to damages in an amount to be determined by proof at trial.

## EIGHTH CAUSE OF ACTION

### 42 U.S.C. § 1983

### (Against All Individual Defendants)

178.    PLAINTIFF realleges and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

179.    At all relevant times, the INDIVIDUAL DEFENDANTS acted under color of law in their capacities as COUNTY employees at RDC and deprived PLAINTIFF of rights secured

51

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

by the Constitution of the United States, including the Fourteenth Amendment right to bodily integrity and to be free from unreasonable, excessive, and sexualized force while in custody.

180. The INDIVIDUAL DEFENDANTS used their authority to isolate, coerce, and sexually assault PLAINTIFF, minor detainees, with deliberate indifference to, and/or specific intent to violate, clearly established constitutional rights.

181. As a direct and proximate result, PLAINTIFF suffered damages as alleged herein. PLAINTIFF seeks compensatory damages, and, against the INDIVIDUAL DEFENDANTS, punitive damages to the extent permitted by law, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## NINTH CAUSE OF ACTION

### MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 (Monell)

### (Against COUNTY)

182. PLAINTIFF realleges and incorporates by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

183. The constitutional deprivations suffered by PLAINTIFF was not isolated or sporadic incidents but rather the foreseeable consequence of longstanding policies, customs, and practices of deliberate indifference maintained by the COUNTY across the entire relevant time period. These customs and practices include, but are not limited to:

   a. failing to train, supervise, and discipline staff regarding prevention, detection, and reporting of sexual abuse;

   b. permitting staff to isolate minors in staff-only areas without adequate supervision, including maintaining known blind spots in camera coverage—such as in the supply closet near the shower room and in portions of the kitchen area—where abuse could and did occur undetected; and

   c. maintaining a culture of fear, intimidation, and retaliation that deterred reporting by youth, including the use of punitive solitary confinement for days

52

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

at a time as a means of controlling and silencing detainees, and the express threats made by staff that complaints would not be believed and would result in additional sexual abuse or physical harm.

184.    The foregoing policies, customs, and practices were the moving force behind the violations of PLAINTIFF's constitutional rights. The COUNTY is liable for damages under 42 U.S.C. § 1983. PLAINTIFF seeks compensatory damages and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## TENTH CAUSE OF ACTION

### FAILURE TO SUMMON IMMEDIATE MEDICAL CARE (Gov't Code § 845.6)

### (Against COUNTY and Individual Defendants)

185.    PLAINTIFF realleges    and    incorporates    by    reference herein each    and every allegation contained above as though fully set forth and brought in this cause of action.

186.    While in custody at RDC the INDIVIDUAL DEFENDANTS and other COUNTY employees knew or, in the exercise of due care, had reason to know that PLAINTIFF was in need of immediate medical and/or mental health care following the sexual assaults alleged herein. Despite this knowledge, they failed to summon such immediate medical care as required by Government Code section 845.6.

187.    As a direct and proximate result of the failure to summon immediate medical care, PLAINTIFF suffered additional and exacerbated injury and damages according to proof.

188.    PLAINTIFF has complied with all applicable prerequisites to filing this action, or, alternatively, are exempt from the Government Claims Act's claim-presentation requirements pursuant to California Government Code § 945.9 as to claims arising out of sexual assault by law enforcement or custodial personnel. To the extent any claim herein arises from injury related to, connected with, or incidental to the sexual assaults alleged, the claim-presentation requirement does not apply.

## PRAYER FOR RELIEF

53

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANTS as follows:

FOR ALL CAUSES OF ACTION

A. For past, present, and future general damages in an amount to be determined at trial;

B. For special damages, including past and future hospital, medical, professional, and incidental expenses in excess of the jurisdictional minimum of this Court according to proof;

C. For costs of suit herein;

D. For exemplary damages against only INDIVIDUAL DEFENDANTS, et al.

E. For civil penalties pursuant to Civil Code section 52(b)(2)

F. For attorney fees pursuant to Civil Code section 52.1

G. For such other and further relief as the Court may deem just and proper.

Date: June 4, 2026

STINAR LANNEN, PLLC

By:_____

JORDAN M. JONES, Esq.
*Counsel for Plaintiffs*

PARKER STINAR, Esq.
SYMONE SHINTON, Esq.
Stinar Lannen, PLLC
*Co-Counsel for Plaintiffs*

54

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that this action be determined by trial by jury.

Date: June 4, 2026

STINAR LANNEN, PLLC

By: _____

JORDAN M. JONES, Esq.
*Counsel for Plaintiffs*

PARKER STINAR, Esq.
SYMONE SHINTON, Esq.
Stinar Lannen, PLLC
*Co-Counsel for Plaintiffs*

55

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF